Opinion issued August 14, 2008


 



 


    




In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00739-CR
____________

MARIO ALBERTO HERNANDEZ, Appellant 

V. 

THE STATE OF TEXAS, Appellee




On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 1072446




MEMORANDUM OPINION
          A jury convicted appellant, Mario Alberto Hernandez, of aggravated assault on
a family member, and the trial court assessed punishment at a $5,000.00 fine and 15
years in prison. See TEX. PENAL CODE ANN. § 22.02(b)(1) (Vernon Supp. 2007). We
determine whether the trial court erred when it did not immediately recognize
appellant’s request for self-representation. We affirm. 
Facts
          Appellant and the complainant, Claudia Hernandez, were married. On June 11,
2006, the couple and their two children were living in a residence in Humble, Texas. 
That evening, the couple’s oldest child, G.H., was out of the house visiting a water
park, and the other family members were at home cooking dinner. As he had done
numerous times in the past, appellant began to argue with Claudia, claiming that she
had been cheating on him. During the argument, appellant threw things and rushed
at their younger child, M.H. Claudia at first denied appellant’s accusation of
infidelity, but she finally admitted to it because “that was what he wanted to hear.” 
Claudia thought that this would cause appellant to leave and to separate from her. 
Appellant instead responded by running into the kitchen and breaking a wall and the
pantry door.
          About this time, G.H. returned to the residence, and appellant began to tell the
children that Claudia had been cheating on him. G.H. attempted to videotape the
argument, but when appellant saw what he was doing, he took the camera, threw it
on the ground, and stepped on it. Claudia ran into the bedroom and got onto the bed;
G.H. followed her and got next to her on the bed to protect her. M.H. came into the
room, and appellant threw a television set that almost hit her. M.H. asked appellant
what was wrong with him and started to cry.
          Appellant began to tell G.H. again that Claudia had cheated on him, and G.H.
responded, “Okay. What do you want me to do?” G.H. did not believe appellant’s
accusations against Claudia. Appellant started hitting walls and yelling, “How is it
possible that you don’t care what your mother has done to me.”
          Appellant eventually calmed down, and Claudia walked outside into the yard. 
Appellant also went outside and got into the family’s RV, as if he was preparing to
leave. Instead, claiming to be calmer, appellant invited Claudia into the RV so that
they could talk. Appellant had a telephone, and he wanted Claudia to call the man
with whom she had allegedly had an affair. Claudia took the telephone from
appellant, but told him that she was not going to call the other man. Appellant
responded by hitting Claudia twice in the face with his fist, at which point Claudia
dialed 9-1-1. Appellant told Claudia that she was a “damn [sic] bitch” and that he
was going to disfigure her so that no other man would look at her. The 9-1-1 operator
called Claudia back; when appellant heard the operator on the telephone, he threw the
phone and hit Claudia. 
          Appellant then pulled out a knife and said, “Now you’re going to go to f---g
hell.” Appellant got on top of Claudia’s legs while she was sitting on the bed in the
RV, and he put a knife at her neck. Appellant stabbed Claudia a few times with the
knife; one of the cuts was to Claudia’s neck. As he stabbed Claudia, appellant said,
“I’m going to kill you, you damn [sic] bitch.” Claudia put up her arm to defend
herself; appellant stabbed her four times in the arm. Claudia pleaded for appellant not
to kill her, and she called for her son, G.H. G.H. ran into the RV and saw appellant
on top of Claudia, stabbing her with the knife. G.H. pulled appellant off of Claudia.
          G.H. threw appellant toward the bed, and appellant began stabbing himself
with the knife. G.H. stopped appellant from stabbing himself, got the knife away
from him, and threw it out the window of the RV. G.H. told appellant to calm down
because the police were coming, and appellant calmed down a little. Claudia was
bleeding heavily, and she was covered in blood. M.H. came into the RV; she was
crying and asking appellant what he had done to Claudia.
          G.H. had Claudia get out of the RV, and he stopped a passing vehicle to get the
driver to take Claudia to the hospital. The driver took her to the hospital. Claudia
stayed in the hospital overnight and well into the following day due to her injuries. 
Claudia received stitches for the stab wounds on her forehead, wrist, arm, and neck.
          On June 15, 2006, appellant was indicted for aggravated assault of a family
member. Trial began on July 19, 2007, with appellant represented by trial counsel. 
During voir dire, appellant asserted the right to represent himself by stating, “I want
to defend myself,” after he was not permitted to answer a question posed by the voir
dire panel. At 3:29 p.m. (immediately after invocation of his right to counsel), the
trial court had appellant removed from the courtroom for unruly and disruptive
conduct. Appellant came back in at 3:30 p.m., his defense counsel completed the voir
dire process, and the jury was selected. At 3:33 p.m., the trial court began to
admonish appellant of the risks of self-representation; the trial court then granted
appellant’s request to proceed pro se. 
          On July 23, 2007, the trial on the merits began, with appellant representing
himself. During this phase, appellant asked the trial court whether he had the right
to participate in the selection of the jury. The trial court responded that a jury had
already been selected before appellant had asserted his right to self-representation. 
The court also indicated to appellant that appellant had been allowed to participate
in jury selection until he became disruptive and was removed from the courtroom. 
The trial court stated that even when appellant was removed from the courtroom, his
attorney went back and spoke with him before the jury had been finally selected.
          Appellant represented himself during the guilt-innocence phase of the trial and
was represented by trial counsel again during the punishment phase.
Right to Self-Representation

          In his sole point of error, appellant contends that the trial court committed
reversible error when it did not immediately consider appellant’s request to represent
himself, but instead proceeded to conclude jury selection without appellant’s
participation. Appellant argues that immediately upon his invocation of the right, the
trial court should not have proceeded with the end of voir dire. Instead, appellant
asserts that the court should have immediately held a Faretta


 hearing outside the
presence of the jury. Appellant argues that he was denied his right to self-representation during voir dire when the Faretta hearing was not immediately held.
Both the United States Constitution and the Texas Constitution provide a right
of self-representation for criminal defendants. U.S. Const. amend. XI; Tex. Const.
art. I, § 10. A defendant in a criminal case has an absolute right of self-representation. Faretta v. California, 422 U.S. 806, 818–20, 95 S. Ct. 2525, 2532–33
(1975). In order for the right of self-representation to be adequately asserted,
however, the request must be timely (before the jury is empaneled), clearly and
unequivocally expressed, and not made with the intention of causing disruption to the
administration of justice. Kombudo v. State, 148 S.W.3d 547, 553–54 (Tex.
App.—Houston [14th Dist.] 2004) (citing Ex Parte Winton, 837 S.W.2d 134, 135
(Tex. Crim. App. 1992) and McDuff v. State, 939 S.W.2d 607, 619 (Tex. Crim. App.
1997)), vacated on other grounds, 171 S.W.3d 888 (Tex. Crim. App. 2005). If the
defendant asserts the right to self-representation after the trial has begun, it is at the
discretion of the trial court whether to recognize the right. Id. at 553. After assertion
of the right, the accused “should be made aware of the dangers and disadvantages of
self-representation, so that the record will establish that ‘he knows what he is doing
and his choice is made with eyes open.’” Faretta, 422 U.S. at 835, 95 S. Ct at 2541
(quoting Adams, 317 U.S. at 279, 63 S. Ct. at 242).
In Kombudo v. State, a defendant asserted the right to self-representation twice
before the jury was sworn: once on the eve of the beginning of voir dire and again
immediately preceding the swearing of the jury. See 148 S.W.3d at 553. His request
to represent himself was denied both times. Id. at 551–52. On appeal, Kombudo
contended that he was denied his right to self-representation both under the Federal
and the State Constitutions. Id. at 552. The court of appeals agreed and held that the
trial court violated Kombudo’s right to self-representation. Id. The holding was
based on the fact that the appellant had asserted his right to self-representation on the
“eve of trial, immediately prior to the commencement of voir dire” and again after
voir dire, but before the jury was “impaneled and sworn.” Id. at 553 (citing Chapman
v. United States, 553 F.2d 886, 894 (5th Cir. 1977)). 
 In its analysis, the Kombudo court stated that the right of self-representation
is not absolute and that, for example, if a defendant first asserts his right to self-representation after trial has begun, the right may have been waived. Id. (citing
Munkus v. Furlong, 170 F.3d 980, 984 (10th Cir. 1999)). The decision at that
point—whether to allow the defendant to proceed pro se at all or to impose
reasonable conditions on self-representation—rests in the sound discretion of the trial
court. Id. (citing United States v. Singleton, 107 F.3d 1091, 1099 (4th Cir. 1997)).
The Kombudo court then discussed the issue of disruptive behavior and the
effect that this behavior has on the right to self-representation, stating that a
“defendant’s request to conduct his own defense must be unequivocal and not a tactic
to secure a delay in the proceedings.” Id. (citing United States v. Smith, 780 F.2d
810, 811 (9th Cir. 1986)). The court further observed that the right of
self-representation is not a license to abuse the dignity of the courtroom and that “the
trial judge may terminate self-representation by a defendant who deliberately engages
in serious and obstructionist misconduct.” Id. (citing Faretta, 422 U.S. at 834 n.46,
95 S. Ct. at 2541). It is a logical conclusion from this limitation noted in Kombudo
that, if the trial court may terminate the right of self-representation, it may also
impose reasonable conditions upon it when the trial has begun and the defendant has
engaged in misconduct prior to the assertion. 
          There is no question in this case that appellant asserted his right to self-representation. Appellant clearly stated that he wanted to represent himself, and the
right was recognized and honored by the trial court. Appellant proceeded to represent
himself during the guilt-innocence phase of the trial.
          The facts in the case before us are similar to, but distinguishable from, those
in Kombudo. The important difference in this case is the factual circumstances
surrounding appellant’s requests. In the instant case, appellant asserted the right of
self-representation as he was being removed from the courtroom for being disruptive. 
In contrast, there was no evidence to show that Kombudo was being disruptive when
he made his request. Because appellant was being disruptive at the very time that he
made his request, the trial court acted within its discretion by imposing a reasonable
condition on self-representation. See Kombudo, 148 S.W.3d at 553. The reasonable
condition imposed in this situation was the completion of voir dire, which was within
five minutes of concluding. 
          The State contends that the trial court quickly honored appellant’s request to
represent himself, even though the manner in which he asserted his right was
disruptive. Looking at the factual circumstances surrounding appellant’s assertion
of his right to self-representation, we conclude that it was within the trial court’s
discretion to determine that stopping the proceedings to admonish appellant
immediately and to allow him to proceed pro se would have delayed the trial
proceedings. Additionally, as indicated above, the trial court had the right to impose
reasonable conditions on appellant’s exercise of his right to self-representation due
to his disruptive behavior. See id. 
          We hold that the trial court did not deprive appellant of his right to self-representation and that it did not abuse its discretion when it completed jury selection
before allowing appellant to exercise his right. Accordingly, we overrule appellant’s
sole point of error. 
                                                                                                            Conclusion
          We affirm the judgment of the trial court. 
          All pending motions are denied as moot.
 
 
Tim Taft
Justice

Panel consists of Justices Taft, Bland, and Hudson.




Do not publish. See Tex. R. App. P. 47.2(b).